THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| WYLDEWOOD CELLARS, INC., and JOHN BREWER<br><br><div align=center>Plaintiffs,</div><br>v.<br><br>TORRO, LLC dba TORRO FUNDING,<br><br><div align=center>Defendant.</div> | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [23] DEFENDANT'S MOTION TO DISMISS**<br><br><div align=center>Case No. 2:23-cv-00363-DBB-JCB</div><br><div align=center>District Judge David Barlow</div> |

Defendant Torro, LLC ("Torro") moves to dismiss claims by Plaintiffs Wyldewood Cellars, Inc. ("Wyldewood") and Mr. John Brewer under the Racketeer Influence and Corrupt Organizations Act ("RICO") and the Kansas Consumer Protection Act ("KCPA"), and for tortious interference with a contract and breach of contract.[1] For the forgoing reasons, the court grants Torro's motion in part and denies it in part.

<div align=center>

**BACKGROUND**

</div>

Wyldewood is a family-owned vineyard and winery in Peck, Kansas.[2] John Brewer is the President of Wyldewood.[3] Torro is a lender.[4] On March 24, 2021, Wyldewood and Torro entered into a merchant-capital agreement ("MCA"), under which Torro loaned $75,000 to Wyldewood in exchange for $111,750 in future receivables.[5] Under the MCA, Wyldewood was to pay Torro

---

[1] Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 23.
[2] Pl.'s Pet. ¶ 16, ECF 1-1.
[3] *Id.* ¶ 28.
[4] *Id.* ¶¶ 7, 19.
[5] *Id.* ¶¶ 24–25; Secured Merchant Agreement for the Purchase and Sale of Future Receivables ("MCA") ¶ 1.e–f, ECF No. 12-1.

$931.25 per day to pay off the loan.[6] In addition, Wyldewood granted Torro a security interest in all accounts and all proceeds,[7] and Mr. Brewer guaranteed the agreement.[8] Wyldewood defaulted on these obligations after paying only $11,172.[9]

The MCA also contained a choice-of-law and forum selection clause, which specified the MCA "shall be governed by and construed exclusively in accordance with the laws of the State of Utah," and that any litigation "arising out of or in connection to" the MCA would take place in Utah.[10] Pursuant to this clause, on April 29, 2021, Torro sued Wyldewood and Mr. Brewer for breach of contract, guarantee, unjust enrichment, and breach of the covenant of good faith and fair dealing in Utah state court.[11] Wyldewood did not respond to this action, and the court entered default judgment on Torro's breach of contract claim on July 7 for $118,699 plus costs and attorneys' fees.[12] Torro then domesticated the judgment in Kansas on April 8, 2022.[13] In addition, on May 16, 2022, Torro sent a "UCC Lien Notice" to some of Wyldewood's customers claiming that the customers must pay amounts owed to Wyldewood directly to Torro.[14]

On December 19, 2022, Mr. Brewer and Wyldewood (collectively "Plaintiffs") sued Torro in Kansas state court, alleging six causes of action: civil RICO, conspiracy in violation of RICO, tortious interference with a contract, deceptive acts under the KCPA, unconscionable acts under the KCPA, and breach of contract.[15] Torro removed the case to the United States District

---

[6] Pl.'s Pet. ¶¶ 25, 31; MCA ¶ 1.g.
[7] Pl.'s Pet.¶ 27; MCA ¶ 22.
[8] Pl.'s Pet. ¶ 28; MCA, Ex. A.
[9] Pl.'s Pet. ¶¶ 75–76.
[10] MCA ¶ 43; Def.'s Mot. ¶ 6; Order Granting Def.'s Mot. to Transfer 2, ECF 18.
[11] Torro Compl., No. 210500340 (Utah Dist. Ct. Wash. Cnty., Apr. 29, 2021); Pl.'s Response to Def.'s Mot. ("Pl.'s Response") 2, ECF 38.
[12] Default J., No. 210500340 (Utah Dist. Ct. Wash. Cnty., July 7, 2021); Pl.'s Pet. ¶ 76; Def.'s Mot. 2.
[13] Pl.'s Pet. ¶ 77.
[14] Id. ¶¶ 134–38.
[15] Id. ¶¶ 79–189.

Court for the District of Kansas,[16] and on June 1, 2023, the District of Kansas transferred the case to this court, pursuant to the forum selection clause in the MCA.[17]

Torro then filed the instant Motion to Dismiss on June 9, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting claim preclusion.[18] Plaintiffs filed their Response on August 11,[19] and Torro filed its Reply on August 24.[20]

## STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[21] A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[22] "On occasion it is proper to dismiss a claim on the pleadings based on an affirmative defense. But that is only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements."[23]

## APPLICABLE LAW

This case was transferred from the District of Kansas. Ordinarily, the law of the transferor court would apply.[24] However, when venue is transferred pursuant to a valid forum

---

[16] Order Granting Def.'s Mot. to Transfer 3.
[17] *Id.* at 14.
[18] Def.'s Mot.
[19] Pl.'s Response.
[20] Def.'s Reply to Pl.'s Response to Def.'s Mot. ("Def.'s Reply"), ECF No. 39.
[21] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[22] *Id.*
[23] *Fernandez v. Clean House LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018); *see also Millner v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965) ("If the defense plainly appears on the face of the complaint itself, the motion [to dismiss] may be disposed of under [Rule 12(b)].").
[24] *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).

selection clause, the law of the transferor court need not apply.[25] The parties here not only have a

forum selection clause, but a choice of law clause, designating Utah as the forum and stating that

Utah law governs the MCA.[26] In its Motion, Torro makes only one argument: that each of

Plaintiffs' claims are barred by claim preclusion.[27] Federal courts must give preclusive effect to

state-court judgments, per the Full Faith and Credit statute.[28] Under the statute, in cases

involving a prior state-court judgment and subsequent litigation in federal court, federal courts

"refer to the preclusion law of the State in which judgment was rendered."[29] Thus, per the

choice-of-law clause, Utah law controls the substantive law to be applied to the MCA, and

because the prior judgment was issued from a Utah court, Utah law controls the preclusive effect

of that judgment.

## DISCUSSION

Under Utah law, the branch of res judicata dealing with claim preclusion applies when:

(1) "both cases . . . involve the same parties and their privies"; (2) "the claim that is alleged to be

barred [was] presented in the first suit or [is] one that could or should have been raised in the

first action"; and (3) "the first suit . . . resulted in a final judgment on the merits."[30] Plaintiffs

---

[25] *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 65 (2013).

[26] MCA ¶ 43.

[27] Def.'s Motion to Dismiss 4. While Torro conclusorily asserts that some of Wyldewood's claims are not cognizable under Utah law, *see id.*, it does not develop this assertion in its motion. Therefore, the court does not discuss it. *See Taylor v. Colvin*, 2:13-cv-00606-DN-PNW, 2015 WL 1002800, *6 (D. Utah Mar. 5, 2015).

[28] *See* 28 U.S.C. § 1738; *see also* 18B Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 4469 (3d ed., 2023 Update).

[29] *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *see also Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 482 (1982) ("It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which judgment is taken."); *McMurray v. Forsythe Fin., LLC*, No. 21-4014, 2023 WL 5938580, *3 (10th Cir. 2023).

[30] *Gillmor v. Fam. Link, LLC*, 2012 UT 38, ¶10, 284 P.3d 622 (quoting *Mack v. Utah State Dep't of Com.*, 2009 UT 47, ¶ 29, 221 P.3d 194); *accord Madsen v. Borthick*, 769 P.2d 245, 247 (Utah 1988).

4

concede the first and third elements.[31] Thus, the only issue in this case is whether each of the claims brought by Plaintiffs in this case were the same cause of action or were claims that could or should have been raised in the initial lawsuit. Because claim preclusion is an affirmative defense under Utah law,[32] the court may only dismiss Plaintiffs' claims if their complaint contains facts suggesting that their claims were the same as Torro's claims in the first action, or that their claims should have been raised in the first action.

### A.  Same Cause of Action

Utah, like the Tenth Circuit,[33] has adopted the "transactional test" from the Restatement (Second) of Judgments to determine whether a claim is the same for purposes of claim preclusion.[34] Under the transactional test, "[c]laims or causes of action are the same as those brought or that could have been brought in the first action if they arise from the same operative facts, or in other words from the same transaction."[35] "[D]eterminations on whether a certain factual grouping constitutes a transaction or series of transactions should be made 'pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, [or] whether they form a convenient trial unit . . . ."[36] A convenient trial unit exists where there is "significant overlap in the facts, witnesses, or evidence necessary" to establish both the prior claims and the claims alleged to be precluded.[37] "[N]o single factor is determinative."[38] Courts applying Utah law have uniformly held that when a cause of action

---

[31] *See* Response 10; *but see* Response 7–8.
[32] *H & H Network Servs., Inc. v. Unicity Intern., Inc.*, 2014 UT App 73, ¶ 8, 323 P.3d 1025 (citing *State v. Perank*, 858 p.2d 927, 931 n.3 (Utah 1992)).
[33] *See Hatch v. Boulder Town Council*, 471 F.3d 1142, 1149–51 (10th Cir. 2006).
[34] *Gillmor*, 2012 UT 38, ¶ 13; *see also* Restatement (Second) of Judgments § 24 (Am. L. Inst. 1982).
[35] *Mack*, 2009 UT 47, ¶ 30; *accord Gillmor*, 2012 UT 38, ¶ 14.
[36] *Gillmor*, 2012 UT 38, ¶ 14 (quoting Rest. 2d Judgments § 24(2)).
[37] *Id.* at ¶ 19.
[38] *Id.* at ¶ 14 (quoting Rest. 2d Judgments § 24 cmt. *b*).

arises from facts that occurred after the complaint in the first action was filed, that cause of action will not be barred by claim preclusion.[39]

The Utah Supreme Court's decision in *Macris & Associates, Inc. v. Neways, Inc.* guides this court's analysis.[40] There, Macris entered into a contract with Images & Attitude.[41] Images terminated the agreement prematurely, and Macris sued for breach of contract.[42] After the complaint was filed but before trial, Neways was incorporated, and Images transferred most of its assets to Neways.[43] Prior to trial in the first action, in which Macris was awarded damages for breach of contract,[44] Macris sued Neways for fraudulent transfer, successor liability, and an alter ego breach of contract claim.[45] The Utah Supreme Court held that claim preclusion did not bar Macris's subsequent claims since the subsequent claims were not the same as the initial breach of contract claim.[46] It reasoned that "[t]he facts giving rise to Macris's [subsequent] claims . . . did not arise until after the filing of the [initial] complaint," and thus, Macris was not obligated to bring those claims in the first action.[47] Further, the two suits were based on entirely different

---

[39] *See McMurray*, 2023 WL 5938580, *3 ("Utah law is clear that claim preclusion does not apply to claims arising out of operative facts that have occurred *after* the initial complaint is filed."); *Hatch*, 471 F.3d at 1148 ("[A]ny causes of action based on facts that occurred after [the date of the complaint in the first action] need not have been included in the case for claim-preclusion purposes."); *Macris & Assocs., Inc. v. Neways, Inc.*, 2000 UT 93, ¶ 25, 16 P.3d 1214 ("[A] party is required to include claims in an action for res judicata purposes only if those claims arose before the filing of the complaint in the first action."); *Pioneer Home Owners Ass'n v. TaxHawk Inc.*, 2019 UT App 213, ¶ 49, 457 P.3d 393.
[40] 2000 UT 93, 16 P.3d 1214.
[41] *Id.* at ¶ 2.
[42] *Id.* at ¶¶ 3–4.
[43] *Id.* at 5.
[44] *Id.* at ¶ 6.
[45] *Id.* at ¶ 7.
[46] *Id.* at ¶¶ 20–31.
[47] *Id.* at ¶ 27. The Utah Supreme Court, in adopting the transactional test, suggested that this aspect of the analysis in *Macris* fit into the transactional test. *See Mack*, 2009 UT 47, ¶ 30. Likewise, the Utah Court of Appeals has confirmed the validity of *Macris*'s analysis within an application of the transactional test. *See Pioneer Home Owners*, 2019 UT App 213, ¶¶ 44, 49. Finally, the Restatement of Judgments has a similar rule. *See* Rest. 2d Judgments § 24 cmt. f ("Material operative facts occurring after the decision of an action with respect to the same

facts and evidence; the first was focused on the agreement between Macris and Images, and whether a breach occurred, while the second was focused on the transfer of assets from Images to Neways.[48]

Here, Plaintiffs brought four sets of claims: (1) two RICO claims; (2) a tortious interference with a contract claim; (3) two KCPA claims; and (4) a breach of contract claim. The court addresses in turn whether each set of claims is barred by claim preclusion.[49]

### 1. RICO Claims

Plaintiffs' first and second causes of actions are brought pursuant to 18 U.S.C. § 1964(c), which allows for a private cause of action for a RICO violation.[50] At the outset, it is important to note that "state courts have concurrent jurisdiction over civil RICO claims."[51] In other words, there would have been no jurisdictional bar to Wyldewood asserting a RICO claim in the prior case in Utah state court.[52]

---

subject matter may in themselves, or taken in conjunction with the antecedent facts, comprise a transaction which may be made the basis of a second action not precluded by the first.").

[48] *Macris*, 2000 UT 93, ¶¶ 28–30. While this aspect of the *Macris* decision is an application of the "state of facts" test, which preceded the transactional test, these concerns remain relevant in the transactional test. *See Gillmor*, 2012 UT 38, ¶¶ 12–14, 19.

[49] Plaintiffs argue that because their claims were not compulsory counterclaims under Utah law, they are not barred by claim preclusion. *See* Pl.'s Response 16–19. The issue of whether Plaintiffs' claims were compulsory counterclaims turns on the same transactional test as the issue of whether Plaintiffs' claims are barred by claim preclusion, *see* Utah R. Civ. P. 13(a)(1) ("A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction."). While the Utah Supreme Court has held that "[t]he rules of procedure and the doctrine of res judicata are not coextensive," it has held that res judicata is more rigorous. *Daz Mgmt., LLC v. Honnen Equipment Co.*, 2022 UT 15, ¶ 64, 508 P.3d 84. Accordingly, the court applies the more rigorous standard to these claims.

[50] Pl.'s Pet. ¶¶ 79–131.

[51] *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990).

[52] *Cf.* Rest. 2d Judgments § 26(1)(c) (creating an exception to the transactional test when a party "was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts").

The elements for a RICO violation under 18 U.S.C. § 1962(c) are "(1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity."[53] 18 U.S.C. § 1962(d) adds that conspiracy to violate subsection (c) is likewise unlawful.[54] "Racketeering activity" is defined to include "any act which is indictable under" a variety of U.S. Code provisions.[55] Plaintiffs allege that the racketeering activity in this case is mail fraud and wire fraud.[56] Specifically, Wyldewood alleges that the MCA itself contained several false representations and that the MCA was "executed electronically and communicated through email exchanges."[57] Since this portion of Plaintiffs' RICO claims stems directly from the MCA, it necessarily forms part of the same transaction as Torro's claim for breach of the MCA in the first action.

However, Plaintiffs also allege that Torro violated RICO by "us[ing] mail to send UCC Lien Notices to Wyldewood's customers."[58] Wyldewood alleged that Torro began sending these lien notices in May 2022,[59] which was just over a year after Torro filed its initial complaint.[60] As in *Macris*, Plaintiffs are not precluded from bringing this claim, since the facts underlying this claim did not arise until after the filing of the initial suit. Further, the filing of these lien notices is unrelated in time, space, and origin from the initial breach of contract action. While the MCA granted Torro a security interest in Wyldewood's accounts and proceeds,[61] which formed the basis of its assertions of a lien, that alone does not mean that the sending of letters to

---

[53] *Salinas v. United States*, 522 U.S. 52, 62 (1997); *see also* 18 U.S.C. § 1962(c).
[54] 18 U.S.C. § 1962(d).
[55] 18 U.S.C. § 1961(1)(B).
[56] Pl.'s Petition ¶ 80; 18 U.S.C. § 1961(1)(B) (incorporating mail and wire fraud, under 18 U.S.C. §§ 1341 and 1343 respectively, into the definition of "racketeering activity").
[57] *Id.* at ¶¶ 82, 88.
[58] *Id.* at ¶ 90.
[59] *Id.* at ¶ 137
[60] *Id.* at ¶ 76.
[61] MCA ¶ 22.

Wyldewood's customers formed the same transaction as Plaintiffs' breach of the MCA. Thus, the portion of the RICO claims based on alleged mail fraud in Torro sending lien notices does not form part of the same transaction as was adjudicated in the first suit and is not barred by claim preclusion.

Plaintiffs make two arguments in support of their position that the portion of their RICO claims stemming from alleged fraudulent misrepresentations in the MCA are not barred: (1) the facts and evidence required to prove their RICO claims differ from the facts and evidence needed in the initial suit;[62] and (2) they had no way of knowing that Torro's conduct was part of a pattern of racketeering activity before Torro filed its complaint in state court, and thus, their RICO cause of action did not accrue before the start of the first suit.[63] On the first point, while it is true that the elements for a RICO claim and the elements for a breach of contract claim are different—and thus, would require somewhat different facts and evidence to establish—the convenience of the trial unit is but one of many non-exclusive factors used to determine whether claims arise from the same transaction. Indeed, as comment *b* to Section 24 of the Restatement points out, "[i]f there is a substantial overlap [in facts and evidence], the second action should ordinarily be precluded. But the opposite does not hold true; even when there is not a substantial overlap, the second action may be precluded if it stems from the same transaction or series."[64] Given that these portions of the RICO claims rely on representations contained in the MCA

---

[62] Pl.'s Response 11–12.
[63] *Id.* 14.
[64] Rest. 2d Judgments § 24 cmt. b.

itself, they are so closely related in time, space, and origin that they must arise from the same transaction as Torro's breach of contract claim.[65]

In support of their second argument, Plaintiffs cite to *Bath v. Bushkin, Gaines and Jonas* for the proposition that "a civil RICO cause of action begins to accrue as soon as the plaintiff discovers, or reasonably should have discovered, both the existence and source of his injury and that the injury is part of a pattern."[66] But the U.S. Supreme Court expressly rejected the rule set forth in *Bath*.[67] Rather than a RICO cause of action accruing upon the plaintiff's discovery of a pattern of racketeering activity, the Supreme Court held that a RICO cause of action accrues upon the plaintiff's discovery of its injury.[68] Here, at the very latest, Plaintiffs discovered their injury with respect to the portion of the RICO claims arising from the MCA when Torro began collecting loan payments, which occurred prior to the first suit.[69] Thus, this argument does nothing to change that the portion of Plaintiffs' RICO claims alleging racketeering activity stemming from the MCA arises from the same transaction as Torro's breach of contract claim.

In sum, the portion of Plaintiffs' RICO claims alleging wire fraud related to the execution of the MCA arise from the same transaction as Torro's breach of contract claim and are barred by claim preclusion, while the portion of Plaintiffs' RICO claims alleging mail fraud related to

---

[65] Wyldewood's reliance on *Borreo v. United Healthcare of N.Y., Inc.* is misplaced. There, healthcare providers sued United HealthCare alleging breach of contract, after a prior adjudication of RICO claims. 610 F.3d 1296, 1300 (11th Cir. 2010). The Eleventh Circuit, applying a test similar to the transactional test adopted by Utah, *id.* at 1308–09, held that because a prior case had held that class certification was appropriate only for the RICO claims but not the breach of contract claims, the two claims could not compose the same cause of action, *id.* at 1310. The prior case reasoned that the evidence needed to establish RICO claims would only be tangentially relevant to any individual plaintiff, since establishing a conspiracy to underpay doctors does not establish that any individual doctor was underpaid. *Id.* at 1309–10. This case is not similar.

[66] 913 F.2d 817, 820 (10th Cir. 1990) (quoting *Bivens Gardens Off. Bldg. v. Barnett Bank*, 906 F.2d 1546, 1553 (11th Cir 1990)).

[67] *See Rotella v. Wood*, 528 U.S. 549, 553–54 (2000).

[68] *Id.* at 553, 561.

[69] *See* Pl.'s Pet. ¶¶ 75–76, 118.

Torro's sending lien notices to Wyldewood's customers do not arise from the same transaction and are not barred by claim preclusion.

### 2.   Tortious Interference with a Contract

Plaintiffs' third cause of action is for tortious interference with a contract. Utah has three elements for tortious interference: (1) intentional interference with existing or potential economic relations; (2) improper means; and (3) injury to the plaintiff.[70] Wyldewood alleges that Torro sent UCC lien notices to various customers, and thereby intentionally interfered with Wyldewood's contracts with those customers, beginning in May 2022[71]—just over a year after Torro filed its complaint in state court. Per the analysis above, Plaintiffs' tortious interference claim arises from a different transaction as did Torro's breach of contract claim.[72]

In reply, Torro argues that it is immaterial that the UCC lien notices were sent after the filing of its initial lawsuit, since Wyldewood's claim is premised on alleged fraudulent misrepresentations contained in the MCA.[73] Even assuming that Wyldewood's tortious interference claim is in-part premised on misrepresentations contained in the MCA, Plaintiffs do not allege that on or before the date Torro filed its lawsuit Torro had interfered with any of Wyldewood's contracts; instead, it alleges that the interference took place around a year later. Practically speaking, Wyldewood could not have counterclaimed for tortious interference in the initial suit, since the alleged tortious interference had not happened yet. And thus, as courts

---

[70] *Eldridge v. Johndrow*, 2015 UT 21, ¶ 70, 345 P.3d 553 (quoting *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293 (Utah 1982)).

[71] Pl.'s Pet. ¶ 136–37.

[72] In reply, Torro briefly argues that Wyldewood did not sufficiently allege facts to support the improper means element. *See* Def.'s Reply 11. The court does not consider arguments raised for the first time on reply. *See Gaddy*, 2:19-cv-00554, 2023 WL 4763981, *6; *Leffler*, 942 F.3d at 1197–98.

[73] Def.'s Reply 6–7.

applying Utah law have recognized,[74] in such circumstances claim preclusion does not bar the second claim.

### 3. Violations of the KCPA

Plaintiffs' fourth and fifth causes of action are for violations of the KCPA, which provides a private cause of action to consumers injured by deceptive or unconscionable business practices.[75] In their fourth cause of action, Plaintiffs allege that Torro committed three deceptive acts: (1) it represented to Plaintiffs "in the MCA . . . that the MCA . . . was not a loan"; (2) it represented to Plaintiffs "in the MCA . . . that the Initial Daily Installment of $931.25 was a good faith approximation of 12% of Wyldewood's future receipts"; and (3) "the MCA . . . contains a process for Wyldewood to reconcile its Initial Installment Payment to match Wyldewood's actual receivable receipts in a given month," but "no such reconciliation process exists [in reality] or would ever be performed."[76] Each of these allegations arises from the same transaction as Torro's breach of contract claim, as each is necessarily premised on what Torro represented in the MCA itself. Thus, claim preclusion entirely bars Wyldewood's fourth cause of action.

In their fifth cause of action, Plaintiffs allege that Torro committed four unconscionable acts: (1) "Torro knew or should have known that Wyldewood would receive no material benefit from the [MCA]" (2) "Torro knew or should have known at the time the MCA . . . was executed

---

[74] *See supra* note 39 and accompanying text.

[75] K.S.A. §§ 50-634, -626(a) (deceptive practices), -627 (unconscionable practices). Torro briefly asserts in its Reply Brief that Wyldewood's KCPA claims "are not cognizable causes of action under Utah law" and that Utah law necessarily governs these claims, given the choice-of-law clause in the MCA. Def.'s Reply 8. Since this argument was raised on reply and the court ultimately finds that these claims are barred by claim preclusion, the court declines to address the issue. *See Gaddy*, 2:19-cv-00554, 2023 WL 4763981, *6; *Leffler*, 942 F.3d at 1197–98.

[76] Pl.'s Pet. ¶¶ 156–68.

that Wyldewood was not going to be able to make the Initial Daily Installment"; (3) "the MCA . . . was excessively one-sided in favor of Torro"; and (4) in the MCA, Wyldewood granted to Torro or waived several rights it ordinarily would have.[77] As above, each of these allegations is based on the same transaction as Torro's breach of contract claim, since each is intrinsically tied to the execution of and performance under the MCA.

Plaintiffs argue that their KCPA claims are not barred by claim preclusion because a portion of these claims did not accrue until after Torro filed the initial suit.[78] Under Kansas law, a new violation of the KCPA occurs each time a plaintiff suffers legal harm.[79] In support of their deceptive acts claim, Plaintiffs allege only that they were harmed through inducement to enter the MCA and payment of Initial Daily Installments.[80] This injury arises from the same transaction as Torro's breach of contract claim, since it arises directly from the MCA and no facts occurring after the filing of the initial lawsuit are present. On their second KCPA claim, Plaintiffs allege at least three periods of separate harm stemming from Torro's alleged unconscionable acts or practices: (1) payment of Initial Daily Installments; (2) payments to Torro as a result of garnishment orders; and (3) lost opportunities and lost reputation stemming from Torro's filing of lien notices. While the latter two harms alleged did take place after the first suit was commenced, this does not change the fact that the alleged underlying unconscionable acts arose from the same transaction that was previously adjudicated. Unlike above, where the RICO claims and the tortious interference claim could not have been brought at the time Torro filed its initial complaint, the unconscionable acts KCPA claim could have been brought as a

---

[77] Pl.'s Pet. ¶¶ 171–86.
[78] Pl.'s Response 14–15.
[79] *See Florez v. Ginsberg*, 449 P.3d 770, 778 (Kan. Ct. App. 2019).
[80] Pl.'s Pet. ¶ 168.

counterclaim in the initial suit, since part of the alleged harm (Plaintiffs' payment of the Initial

Daily Installments) had occurred. In other words, since both the proscribed conduct and a portion

of the injury occurred in the same transaction that led to Torro's breach of contract suit, that

there was additional damage that took place after the initial suit does not alter the analysis.[81]

Finally, Plaintiffs argue that because their KCPA claims would involve proving Torro's

state of mind, and thus, involve different evidence than Torro's breach of contract claim, the

KCPA claims should not be precluded.[82] As above, this argument is unpersuasive. While Utah

courts do weigh whether the facts and evidence needed to prove a claim will be the same when

evaluating whether two claims are identical for claim preclusion purposes, that is but one factor

of many.[83] And here, since the KCPA claims each arise from representations made in, or effects

of, the MCA, and the breach of the MCA was the transaction at issue in the prior suit, the KCPA

claims are so closely related to the breach of contract claim that they arise from the same

transaction.

### 4. Breach of Contract

Plaintiffs' sixth and final cause of action is for breach of the MCA agreement. Under

Utah law, a breach of contract claim requires proof of "(1) a contract, (2) performance by the

party seeking recovery, (3) breach of the contract by the other party, and (4) damages."[84]

Plaintiffs allege that Torro breached the MCA by: "(a) Refusing to reconcile the daily payments

and have such payments be a true reflection of the daily receipts based on the amount of

---

[81] *See* Rest. 2d Judgments § 25 cmt. c.
[82] Pl.'s Response 13.
[83] *See Gillmor*, 2012 UT 38, ¶¶ 14, 19.
[84] *Bair v. Axiom Design, LLC*, 2001 UT 20, ¶ 14, 20 P.3d 388, *abrogated on other grounds as recognized in A.S. v. R.S.*, 2017 UT 77, 416 P.3d 465.

receivables allegedly purchased; (b) Not funding the amount required under the respective

agreement; and (c) Seeking to recover interest on the Purchased Amount."[85] Each of these

breaches would have occurred sometime between Plaintiffs' execution of the MCA on March 24,

2021, and Torro's initial suit on April 29, 2021. As a result, each of these breaches is temporally

close to and involves the same subject matter as the breach at issue in the initial suit, and thus,

arises from the same transaction. Indeed, Plaintiffs do not attempt to defend their breach of

contract claim against Torro's Motion to Dismiss. Thus, Plaintiffs' breach of contract claim is

barred by claim preclusion.

### B.  Knowledge of Facts Giving Rise to Claims

In an effort to save the portions of their claims that would otherwise be barred by claim

preclusion, Plaintiffs argue that in order for claim preclusion to apply, they must have been

subjectively aware of every fact necessary to form the basis for their claims prior to the initiation

of Torro's suit in state court.[86] In support of this argument, Plaintiffs cite a line from *Macris*,

noting that "a plaintiff need only include claims in a suit for res judicata purposes if the plaintiff

was aware of the facts upon which the later claims were based at the time the first suit was

filed."[87] This statement from *Macris* does not reach as far as Plaintiffs suggest, at least following

Utah's adoption of the transactional test.  First, *Macris* itself did not hold that Macris's subjective

awareness of its claims prevented application of claim preclusion, but rather, held that the facts

giving rise to the claims themselves simply did not occur until after the filing of the initial suit.[88]

---

[85] Pl.'s Pet. ¶ 188.
[86] Pl.'s Response 15–16.
[87] *Macris*, 2000 UT 93, ¶ 24.
[88] *Id.* at ¶ 27.

Second, no Utah cases applying the transactional test have gone so far as Plaintiffs urge.[89] Indeed, the Utah Court of Appeals has expressly rejected the applicability of the subjective awareness test following Utah's adoption of the transactional test.[90] Third, both the Restatement and courts applying the transactional test (independent of Utah law) hold that newly discovered evidence will avoid application of claim preclusion only when it was not discovered because of fraud, concealment, or misrepresentation on the part of the other party.[91] Therefore, *Macris* applies to the extent that it establishes that facts arising after the filing of the initial complaint are not barred by claim preclusion.[92]

Regardless, Plaintiffs' Petition establishes that they had sufficient knowledge of the claims that would otherwise be precluded. In the RICO claim related to misrepresentations in the MCA, Plaintiffs pled that the terms of the MCA itself were representations and that these representations were false or misleading.[93] Likewise, for each KCPA cause of action, Plaintiffs pled that Torro engaged in deceptive or unconscionable acts within the MCA itself,[94] or at the time the MCA was signed.[95] Because under Utah law "sophisticated business parties are charged with knowledge of the terms of the contracts that they enter into,"[96] Plaintiffs are presumed to

---

[89] *Cf. Hatch*, 471 F.3d at 1148 (noting *Macris*'s statement about subjective awareness but holding only that "any causes of action based on facts that occurred after [the date of the filing of the initial action] need not have been included in the case for claim-preclusion purposes"); *Daz Mgmt., LLC*, 2022 UT 15, ¶ 62 (mentioning subjective awareness of claims in passing).

[90] *See Myrberg v. Snelgrove*, 2013 UT App 89, ¶¶ 6–9, 301 P.3d 25 (*citing Mack v. Division of Securities*, 2009 UT 47, 221 P.3d 194).

[91] Rest. 2d Judgments § 26 cmt. j; *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1244 (10th Cir. 2017) ("Claim preclusion applies to all claims arising from the same underlying transaction 'even where the new claims are based on newly discovered evidence, unless the evidence was either fraudulently concealed or could not have been discovered with due diligence.'" (quoting *In re Adelphia Recovery Tr.*, 634 F.3d 678, 695 (2d Cir. 2011))).

[92] *See supra* note 39 and accompanying text.

[93] Pl.'s Pet. ¶¶ 82–86.

[94] *Id.* ¶¶ 156–67.

[95] *Id.* ¶¶ 171–82.

[96] *ASC Utah, Inc. v. Wolf Mountain Resorts, L.C.*, 2010 UT 65, ¶ 28, 245 P.3d 184.

have been aware of the facts that form the basis for each of these claims. Thus, this argument does nothing to save Plaintiffs' claims.

## ORDER

Accordingly, Defendant's Motion to Dismiss is GRANTED in part and DENIED in part. Plaintiffs' KCPA claims, their RICO claims arising out of the MCA, and their breach of contract claim are precluded and therefore are DISMISSED WITHOUT PREJUDICE; Plaintiffs' RICO claims arising out of Torro's sending of lien notices, and their tortious interference claim are not. If Plaintiffs have a good faith basis to amend their complaint, they may seek leave to amend within 30 days.

Signed September 21, 2023.

BY THE COURT

_____
David Barlow
United States District Judge

17