## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| WYLDEWOOD CELLARS, INC., et al., | **MEMORANDUM DECISION & ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Plaintiffs, | |
| v. | Case No. 2:23-cv-00363 |
| Torro, LLC, | District Judge Ann Marie McIff Allen |
| Defendant. | Magistrate Judge Jared C. Bennett |

## <u>INTRODUCTION</u>

This matter is before the Court on Defendant Torro, LLC's ("Torro"), Motion for Summary Judgment ("Motion").[1] As relevant to this Motion, Plaintiffs Wyldewood Cellars, Inc. ("Wyldewood"), and John Brewer (collectively "Plaintiffs") pursue against Torro: a RICO[2] claim, a RICO conspiracy claim, and a claim under Utah law for tortious interference with an existing contract.[3] In the Motion, Torro argues Plaintiffs lack sufficient evidence: (1) to show Torro committed RICO predicate acts (namely, alleged wire and mail fraud);[4] and (2) to demonstrate Torro engaged in the requisite improper means to support a claim for tortious interference with an existing contract.[5] The Court held a hearing on July 17, 2025. Russell B.

---

[1] ECF No. 47.
[2] RICO refers to the Racketeer Influenced and Corrupt Organizations Act. *See* 18 U.S.C. § 1962, *et seq.* RICO provides for a private civil action at 18 U.S.C. § 1964(c).
[3] *See* ECF No. 1, Ex. 1.
[4] ECF No. 47 at 4–7.
[5] *Id.* at 7–8.

Weeks appeared and argued on behalf of Torro. Aaron K. Johnstun appeared and argued on behalf of Plaintiffs. For the reasons discussed below, the Court will grant Torro's Motion.

## PROCEDURAL HISTORY

While the Complaint contains allegations related to six causes of action, only three remain partially active following Judge Barlow's September 21, 2023 Order[6] in this case. The six causes of action alleged in the Complaint are: (1) violation of 18 U.S.C. § 1962(c) (RICO), (2) violation of 18 U.S.C. § 1962(d) (RICO conspiracy), (3) tortious interference with an existing contract, (4) deceptive acts under the Kansas Consumer Protection Act, (5) unconscionable acts under the Kansas Consumer Protection Act, (6) and breach of contract.[7] Judge Barlow's September 21, 2023 Order[8] dismissed several claims, finding they were precluded based on a prior lawsuit[9] between these parties. Judge Barlow dismissed the Kansas claims, the breach of contract claims, and partially dismissed the RICO claims, insofar as those claims seek to rely on alleged misrepresentations in the parties' "Secured Merchant Agreement for the Purchase and Sale of Future Receivables"[10] (hereinafter the "MCA," which was the same agreement at issue in the parties' prior lawsuit).

Accordingly, three claims remain active, including: first, a RICO claim insofar as that claim is predicated on Torro sending certain lien notices to Wyldewood's customers, beginning in

---

[6] ECF No. 40. This case was reassigned to the undersigned on April 30, 2024. ECF No. 45.

[7] *See* Compl., ECF No. 1, Ex. 1.

[8] ECF No. 40.

[9] Torro filed the prior state lawsuit against Wyldewood and Mr. Brewer, alleging breach of contract, guarantee, unjust enrichment, and breach of the covenant of good faith and fair dealing. *See* ECF No. 40 at 2 (citing *Torro v. Wyldewood*, Case No. 210500340 (Ut. Fifth Dist. Ct., 2021)). Wyldewood defaulted in that case and default judgment was entered in the amount of $118,699, plus costs and attorney fees. *See id.*

[10] ECF No. 51, Ex. 4.

May 2022; second, a RICO conspiracy claim; and third, a claim for tortious interference with an

existing contract, also related to the lien notices.

## **FACTS**

The undisputed facts, which are unusually sparse given the parties elected to forgo

conducting any discovery in this case,[11] are taken entirely from the parties' briefing and a few

documents the parties submitted to the Court's electronic docket.

On March 24, 2021, Torro and Wyldewood entered the MCA,[12] which is attached as an

exhibit to the Complaint.[13]  The MCA provided that Torro was purchasing $111,750 worth of

Wyldewood's future receivables for $75,000.[14]  Wyldewood agreed to make daily payments to

Torro of $931.25.[15]  The same day that the MCA was executed, Plaintiff John Brewer signed a

Personal Guaranty in which he agreed to "irrevocably, absolutely and unconditionally

guarantee[]" Wyldewood's performance due to Torro under the MCA.[16]

In the MCA, Wyldewood represented that it "has and will continue to have good,

complete and marketable title to all Future Receipts, free and clear of any and all liabilities, liens,

claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities,

pledges and encumbrances of any kind or nature whatsoever or any other rights or interest other

than by virtue or entering into this Agreement."[17]  Wyldewood then granted Torro "a continuing,

---

[11] *See* Mot. Summ. J. Hr'g 34:24–35:3, 39:1–4 (July 17, 2025).

[12] *See* Mot. at 2; Pls.' Opp'n at 2, ECF No. 51.

[13] ECF No. 1, Ex. A.  It is also attached as an exhibit to Plaintiffs' Opposition to the Motion.
ECF No. 51, Ex. 4.

[14] ECF No. 51, Ex. 4 at 1–2.

[15] *Id.* The parties agreed this amount, $931.25, represented "a good faith approximation" of the
12% of Wyldewood's receivables that Torro purchased through the MCA.  *Id.*

[16] *Id.* at 13–15.

[17] *Id.* at 8.

perfected and first priority lien upon and security interest in, to and under all of [Wyldewood]'s

right, title and interest in and to . . . all accounts, including without limitation, all deposit

accounts, accounts-receivable, and other receivables, chattel paper, documents, equipment,

general intangibles, instruments, and inventory . . . ."[18]  In the event of default, Wylewood

authorized Torro "to sign [Wyldewood]'s name on any . . . assignment directing customers or

account debtors . . . to make payment directly to" Torro.[19]

 While the exact timing and amounts are unclear (and immaterial to the Court's analysis)

Wyldewood made payments totaling approximately $11,175 under the MCA until it stopped

making payments on approximately April 14, 2021.[20]  Torro treated Wyldewood's failure to pay

on April 14, 2021, as an event of default and filed suit against Plaintiffs in Utah's Fifth Judicial

District Court in Washington County, Utah ("Utah State Court").[21]  On July 7, 2021, the Utah

State Court, entered default judgment against Plaintiffs in the amount of $118,699.[22]  Plaintiffs

do not suggest they ever attempted to challenge or set aside the Utah State Court's judgment.

 In May and July 2022, Torro sent letters to various customers of Wyldewood, entitled

"UCC Lien Notice and Notice of Power of Attorney Granted by Assignor to Torro, LLC, Giving

Torro, LLC Power of Attorney Over Accounts Receivable of Assignor" ("2022 Lien Notices").[23]

The 2022 Lien Notices advised Wyldewood's customers that Wyldewood defaulted on the MCA

and the customer should make payments to Torro, rather than Wyldewood, until Wyldewood paid

---

[18] *Id.*
[19] *Id.* at 10.
[20] *See* ECF No. 1, Ex. 1 ¶ 75; ECF No. 51, Ex. 6 ¶ 22.
[21] ECF No. 51, Ex. 6.
[22] ECF No. 51 at 3.
[23] *Id.* at 8; *see id.*, Exs. 8–10.

all amounts due under the MCA.[24]  On July 1, 2024, Torro sent a letter to Wyldewood customer,

Standard Beverage entitled, "UCC Lien Notice and UCC Notice of Assignment and Payments to

be Made to Torro, LLC" ("2024 Lien Notice").[25]  While the specific language changed in the

2024 Lien Notice, it also advised Standard Beverage to make payments directly to Torro until

Wyldewood satisfied its obligations under the MCA.[26]

On December 19, 2022, Plaintiffs filed the instant action in Kansas State Court, asserting

the claims discussed previously.[27]  Torro removed the action to federal court.[28]  Subsequently the

District of Kansas transferred the case to the District of Utah.[29]

## ANALYSIS

Torro is entitled to summary judgment because Plaintiffs cannot point to sufficient facts

in the record to sustain their RICO claim, RICO conspiracy claim, and their claim of tortious

interference with an existing contract.  The Court must grant summary judgment when "the

movant shows there is no genuine dispute as to any material fact and movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of

demonstrating the absence of a genuine issue of material fact.[30]  *See Celotex Corp. v. Catrett*,

---

[24] *See* ECF No. 51, Exs. 8–10.  The Court will examine some of the specific language in the 2022
Lien Notices, to which Plaintiffs take issue, in the analysis below.  *See infra* Part I.c.
[25] ECF No. 51, Ex. 12.
[26] *See id.*
[27] ECF No. 51 at 3; *see supra*, nn. 7–10.
[28] *See* ECF No. 1.
[29] *See* ECF No. 18–19.
[30] Contrary to Plaintiffs' suggestion, this burden is minimal, particularly where a party bearing
the burden of proof fails to adduce facts during discovery.  *See Celotex Corp. v. Catrett*, 477 U.S.
317, 323(1986) (holding a party moving for summary judgment need only present "the basis for
its motion" and need not "support its motion with affidavits or other similar materials *negating*
the opponent's claim") (emphasis original); *see also id.* at 322–23 ("[T]he plain language of Rule
56(c) mandates the entry of summary judgment, after adequate time for discovery and upon

477 U.S. 317, 323 (1986).  Once that initial burden has been met the non-moving party must

demonstrate the existence of specific material facts in dispute to survive summary judgment.  *1-*

*800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013).  In resolving a

motion for summary judgment, the Court views "the evidence and make[s] all reasonable

inferences in the light most favorable to the nonmoving party."  *Nat. Gas Co. v. Nash Oil & Gas,*

*Inc.*, 526 F.3d 626, 629 (10th Cir. 2008) (citation omitted).  Despite this deference, the

nonmoving party must nevertheless "present affirmative evidence in order to defeat a properly

supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257

(1986).  "To defeat a motion for summary judgment, evidence, including testimony, must be

based on more than mere speculation, conjecture, or surmise."  *Bones v. Honeywell Int'l, Inc.*,

366 F.3d 869, 875 (10th Cir. 2004) (citing *Rice v. United States*, 166 F.3d 1088, 1092 (10th

Cir.1999)).  "The mere existence of a scintilla of evidence in support" of the nonmoving party's

case is insufficient.  *Anderson*, 477 U.S. at 252.  With these standards in mind, the Court turns to

Plaintiffs' claims.

## I.    Torro is entitled to summary judgment on Plaintiffs' RICO and RICO Conspiracy claims

As discussed in detail below, Plaintiffs' RICO claim suffers several fatal deficiencies

which entitles Torro to summary judgment.  To sustain a RICO claim under § 1962(c) Plaintiffs

must offer evidence that: a "'person' '(1) conducted the affairs (2) of an enterprise (3) through a

---

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.")

pattern (4) of racketeering activity.'" *Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1182 (10th Cir.

2019) (quoting *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1248 (10th Cir. 2016)).

Plaintiffs must also show the alleged RICO violation was the proximate cause of their injury.

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO

claim for proximate causation, the central question it must ask is whether the alleged violation

led directly to the plaintiff's injuries.").  As discussed in the subsections below, Plaintiffs have

not established: (a) RICO predicate acts of wire or mail fraud; (b) a "pattern" of unlawful

activity; (c) that any asserted RICO violation was the proximate cause of Plaintiffs' injury; and

(d) that any "person" conducted the affairs of a separate and distinct "enterprise."

> ### a.    Plaintiffs offer insufficient evidence to establish RICO predicates of wire or mail fraud

In the Complaint, Plaintiffs allege Torro committed RICO predicates of wire and mail

fraud.  To prove wire or mail fraud, Plaintiffs must offer evidence to show "the existence of a

scheme or artifice to defraud or obtain money or property by false pretenses, representations or

promises." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1281–82 (10th Cir. 2023).  This

requires showing more than false statements alone; Plaintiffs must offer evidence that Torro

intended to defraud someone.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 892

(10th Cir. 1991).  The record before the Court is scant.[31]  Nonetheless, even assuming Plaintiff

could show that Torro made a misrepresentation[32] of some sort, the record is devoid of evidence

that could establish Torro harbored the requisite intent to defraud.  Plaintiffs assert the 2022 Lien

---

[31] This case is remarkable for what is missing because Plaintiffs opted to take no fact discovery in this case.  Mot. Summ. J. Hr'g 34:24–35:3, 39:1–4 (July 17, 2025).  In a sense, Plaintiffs' claims fail because there is effectively no record before the Court.

[32] The alleged misrepresentations are described in further detail below.  *See* Part I.c, *infra*.

Notices and a 2024 Lien Notice to Standard Beverage,[33] demonstrate an intent to defraud.[34]

These notices are insufficient to establish Torro's intent (including any reckless disregard of any

facts) for two reasons.

First, Plaintiffs do not offer any evidence of Torro's knowledge regarding any facts, at or

near the time Torro sent the 2022 Lien Notices or the 2024 Lien Notice, that might suggest Torro

harbored some fraudulent intent.  Nor do Plaintiffs offer evidence about whether Torro

undertook any research before sending the same.  This is unsurprising because Plaintiffs

conducted no discovery.  Without any evidence about what Torro knew, or what efforts it made

to ascertain accurate information, Plaintiffs invite the Court to assume that Torro knowingly or

recklessly made the alleged misrepresentations.  The Court declines this invitation.  While the

Court must make all reasonable inferences in Plaintiffs' favor, those inferences must be based on

some evidence to support them.  The 2022 Lien Notices and the 2024 Lien Notice do not, on the

face of those documents, establish Torro harbored intent to defraud anyone.[35]

---

[33] ECF No. 51, Ex. 12.

[34] ECF No. 51 at 21.  The Court has doubts whether Plaintiffs are in any position to assert any fraud claim predicated upon these notices because the facts are not alleged in the Complaint.  *See* ECF No. 1, Ex. 1; *Shyers v. Metropolitan Property & Casualty Ins. Co.*, No. 24-5036, 2025 WL 2088721, at *8 (10th Cir. July 25, 2025) ("Although parties can refer to facts only found in discovery to show material factual disputes sufficient to preclude summary judgment, due process and notice-pleading principles require they not alter radically the factual basis of their complaint at summary judgment by introducing a new factual basis not previously presented in the pleadings for a claim.") (cleaned up).  Given Plaintiffs' RICO claim fails even with these facts, the Court need not carefully parse this issue now.  Although, the issue will be revisited below.  *See infra* Part II.

[35] Plaintiffs' argument likewise fails because it asserts Torro "intended to defraud Plaintiffs," ECF No. 51 at 21, by misstating, among other things, Torro's first priority interests in Wyldewood's accounts receivable.  *See* Mot. Summ. J. Hr'g 18:9–17 (July 17, 2025); *see* ECF No. 51 at 22 (asserting Torro misrepresented the priority of their lien).  The record before the Court discloses only one source of Torro's confusion about its superior lien position: Wyldewood.  Wyldewood represented in the MCA that it was granting Torro "a continuing,

Second, Plaintiffs also point to the 2024 Lien Notice Torro sent to Standard Beverage.[36] Torro asks the Court to infer, from changes to language in the 2024 Lien Notice, that Torro harbored some intent to defraud when it sent the 2022 Lien Notices.[37]  The Court declines to do so because Plaintiffs' proposed use of the 2024 Lien Notice is impermissible under the Rules of Evidence. Rule 407 prohibits evidence of "measures . . . taken that would have made an earlier injury or harm less likely to occur . . . to prove . . . culpable conduct."  Fed. R. Evid. 407. Plaintiffs may not introduce evidence of Torro's measures taken to moderate the language in its letters to Wyldewood's customers as evidence of Torro's culpable conduct, namely that Torro acted with fraudulent intent.

Finally, Plaintiffs argue that the 2024 Lien Notice itself constitutes fraud and that intent can be inferred from Newtek's letter informing Torro of Newtek's purportedly superior lien. Even assuming Plaintiffs could establish all of the elements to support a mail fraud claim as to this 2024 Lien Notice, the RICO claim still fails because a RICO claim must be supported by at least two predicate acts.  *See, e.g.*, *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1254 (10th Cir. 2016) ("To establish a pattern of racketeering activity, the plaintiffs must allege at least two

---

perfected and first priority lien upon and security interest in, to and under all of [Wyldewood]'s right, title and interest in and to . . . all accounts, including without limitation, all deposit accounts, accounts-receivable, and other receivables, chattel paper, documents, equipment, general intangibles, instruments, and inventory . . . ."  ECF No. 51, Ex. 4 at 8; *see also* Mot. Summ. J. Hr'g 22:13–23:12 (July 17, 2025) (discussing Wyldewood's representation to Torro in the MCA that Wyldewood was giving Torro "first priority lien on Wyldewood's accounts receivable" and "perfected and first priority lien upon security").  It is unclear how Torro might have intended to defraud Plaintiffs using misinformation Plaintiffs initially supplied to Torro.
[36] ECF No. 51, Ex. 11.  Torro sent the 2024 Lien Notice after receiving a copy of a letter Newtek previously sent to Standard Beverage in which Newtek asserted it held a lien position superior to Torro's and that Standard Beverage should not pay Torro.  *See id.*
[37] *See* ECF No. 51 at 23.

predicate acts.").  Moreover, as discussed below, the Complaint does not allege any facts related

to the 2024 Lien Notice because the Complaint was filed eighteen months prior to Torro sending

the Lien Notice.[38]

Based on the foregoing, Plaintiffs fail to offer sufficient evidence to support their alleged

RICO predicates, namely, mail and wire fraud.

      **b.**  **Even assuming Plaintiffs had set forth two RICO predicate acts, they offer no evidence of a "pattern" of unlawful activity and instead point to evidence suggesting a lack of continuing racketeering activity**

Next, even assuming Plaintiffs' reference to the 2022 Lien Notices and the 2024 Lien

Notice[39] could somehow establish wire-or-mail-fraud predicates, Plaintiffs offer no evidence that

could establish a "pattern" of unlawful activity.  Although Plaintiffs must establish at least two

RICO predicates within a ten-year period, those predicates alone are insufficient to establish a

"pattern."  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) ("a

pattern of racketeering activity is not established merely by proving two predicate acts.").

"Rather, to establish a RICO pattern it must also be shown that the predicates themselves amount

to, or that they otherwise constitute a threat of, *continuing* racketeering activity." *Id.* (cleaned up)

(emphasis in original).  "According to the Supreme Court, a RICO pattern requires that the

racketeering predicates relate to each other and amount to a threat of continued racketeering

activity." *Johnson v. Heath*, 56 F.4th 851, 858 (10th Cir. 2022).  No pattern exists without this

"continuity plus relationship."  *Id.*  The relationship requirement is "not a cumbersome one" and

requires  the RICO predicate acts "have the same or similar purposes, results, participants,

---

[38] *See infra* Part II.
[39] The 2024 Lien Notice suffers additional problems, discussed below.  *See infra* Part II.

victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* The Court assumes this element could be met for purposes of this analysis.

On the other hand, the continuity "standard is more stringent than the relationship standard." *Id.* at 859. The inquiry is fact-intensive and has two paths: (1) closed-end continuity, which requires a series of related racketeering acts[40] over a substantial period of time;[41] and (2) open-ended, which requires a "showing that the racketeering acts involved implicit or explicit threats of repetition, that they formed the operations of an association that exists for criminal purposes, or that they were the defendants' regular way of conducting a legitimate enterprise." *Id.* at 859–60.

Plaintiffs offer no factual basis in the record that might support a finding of threatened "continuing" racketeering activity here. Rather, the only conduct discussed appears to be a limited course of conduct between only Plaintiffs and Torro that involved the 2022 Lien Notices, which were sent to Wyldewood's customers in 2022.[42] Far from establishing continuity, this appears to be a single letter sent to several customers, with only the customer's name changed.

As previously mentioned, Plaintiffs also refer to the 2024 Lien Notice. Yet this does not help Plaintiffs. Rather, Plaintiffs' argument about the 2024 Lien Notice inadvertently disclaims

---

[40] Also referred to as extensiveness, this requires consideration of "the number of victims, the number of racketeering acts, the variety of racketeering acts, whether the injuries were distinct, the complexity and size of the scheme, and the nature or character of the enterprise." *Johnson v. Heath*, 56 F.4th 851, 860 (10th Cir. 2022).

[41] A period of months may be sufficient. *See Johnson* at 860. (citing favorably case that found a duration of seven to eighteen months constituted a substantial amount of time).

[42] The three example letters provided by Plaintiffs are identical with the exception of the name of the vendor and were sent to: Standard Beverage, ECF No. 51, Ex. 8; Zerolink/Vinoshipper, ECF No. 51, Ex. 9; and Whole Foods Market, ECF No. 51, Ex. 10.

any continuing activity because they assert that Torro "made wholesale changes to the content in the 2024 Lien Notice it sent to Wyldewood's Customers and eliminated all of the specific statements identified above as being misrepresentations."[43]  When the Court pressed Wyldewood's counsel during the hearing on this Motion, counsel could not identify any misrepresentation in the 2024 Lien Notice.[44]  Accordingly, Plaintiffs undermine any claim that a "pattern" of unlawful activity exists because they indicate Torro made corrective changes following the 2022 letters at issue.

### c.  Plaintiffs are unable to point to any harm Torro's actions caused to Plaintiffs

Third, Plaintiffs are not able to show that any of Torro's alleged conduct caused harm to Plaintiffs, rather than third parties.  RICO "is limited by the 'requirement of a direct causal connection' between the predicate wrong and the harm."  *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 17–18 (2010).  Supreme Court "precedent makes clear, moreover, that the compensable injury flowing from a [RICO] violation ... necessarily is the harm caused by [the] predicate acts."  *Id.* at 13 (cleaned up); *see also Cleveland v. United States,* 531 U.S. 12, 15–16 (2000) ("It does not suffice ... that the object of the fraud may become property in the recipient's hands; for purposes of the mail fraud statute, the thing obtained must be property in the hands of the victim").

Plaintiffs primarily claim Torro committed fraud by asserting a first-priority interest in Wyldewood's accounts receivable because Wyldewood had already sold its accounts receivable

---

[43] ECF No. 51 at 23.
[44] Mot. Summ. J. Hr'g 27:9–15 (July 17, 2025).

to other entities and Torro should have discovered that while conducting due diligence.[45]

Plaintiffs also argue three other statements were misleading: (1) a statement that, "it has come to

Torro's attention that [Wyldewood customer] has been processing payments with [Wyldewood]

without forwarding these receipts to Torro which is a violation of the UCC-1 filing and security

interest and thereby interfering with the [MCA];"[46] (2) Wyldewood "is using [Wyldewood's

customer] to avoid payment to Torro pursuant to the" MCA;[47] and (3) that the MCA "was

structured so that Torro was to receive a percentage of all [Wyldewood]'s sales."[48]

       None of these statements caused harm to Plaintiffs.  Rather, even if the Court assumes

these statements are false, the statements could only cause harm to the other lienholders with

superior rights to Wyldewood's accounts receivable or, perhaps, to Wyldewood's customers.

Given Plaintiffs assert they had already assigned over 100% of their accounts receivable,[49] then

any misrepresentation that money should be paid to Torro harms the prior assignees because

Torro is getting ahead of them in line.  It is also conceivable that a customer might be harmed if a

payment made to Torro is not properly credited with Wyldewood's other creditors who then seek

---

[45] ECF No. 51 at 6, 18; Mot. Summ. J. Hr'g 18:9–17 (July 17, 2025).

[46] *E.g.*, ECF No. 51, Ex. 8 at 1.

[47] *E.g*, *id.*

[48] *Id.*  The MCA states Torro desires "to purchase from [Wyldewood] a Specified Percentage of [Wyldewood]'s Future Receipts . . . ."  (ECF No. 51, Ex. 4 at 1.)  The MCA then defines: "Specified Percentage" as "(12%) of each and every sum from sale made by [Wyldewood] of Future Receipts."  *Id.* at 2.  "'Future Receipts' shall mean, collectively, all of [Wyldewood]'s receipts of monies for the sale of its goods and services . . . ."  *Id.*  Thus, Plaintiffs' argument appears to be an improper attempt to challenge the MCA, which claim has been precluded by Judge Barlow's September 21, 2023 Order, ECF No. 40.

[49] ECF No. 51 at 6, 18 ("at the time Plaintiffs executed the MCA . . . Wyldewood had no accounts to transfer to [Torro] as it had already sold those accounts to Wyldewood's other . . . lenders" and "[Torro] demanded payment of accounts which were pledged to other creditors as collateral"); *see* Compl. ¶¶ 34–35, 41.

the same money from a customer.  In any event, under Plaintiffs' theory of this case, they are not

entitled to the money Torro sought through their allegedly fraudulent conduct.[50]  Accordingly,

Torro's alleged violation of RICO did not cause harm to Plaintiffs because Wyldewood owed the

money Torro sought to Wyldewood's other creditors.

### d.  Plaintiffs fail to describe a "person" that is distinct from the alleged "enterprise"

Finally, there is a legal deficiency with Plaintiffs' claim.[51]  Plaintiffs assert the alleged

RICO "person" and defendant (Torro) is identical to the alleged RICO enterprise (consisting of

"Torro, together with its respective officers, owners, and investors . . . ").[52]  "[T]o establish

liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a

'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different

name."[53]  *Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1176 (10th Cir. 2019) (quoting *Cedric*

*Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001).

Put otherwise: "For liability to attach to a RICO defendant, the defendant "person' must be an

---

[50] Plaintiffs likewise fail to show anyone relied upon any of Torro's statements.  "[A] RICO plaintiff who alleges injury 'by reason of' a pattern of mail fraud" must show "that show[] that *someone* relied on the defendant's misrepresentations."  *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008).

[51] Initially, the Court considered requesting additional briefing on this issue.  Mot. Summ. J. Hr'g 37:12–38:5 (July 17, 2025).  Given Plaintiffs did not take any discovery, *see id.* 34:24–35:3, 39:1–4,  and in light of the other deficiencies with Plaintiffs' RICO claim noted above, the Court elects to forego further briefing because it would not change the outcome here.

[52] Compl. ¶ 97.

[53] "This interpretation flows from the statute's mandate that the person who engages in the pattern of racketeering activity be 'employed by or associated with' the enterprise."  *Brannon v. Boatmen's First Nat. Bank of Oklahoma*, 153 F.3d 1144, 1146 (10th Cir. 1998) (quoting 18 U.S.C. § 1962(c)).  "Logic alone dictates that one entity may not serve as the enterprise and the person associated with it because ... 'you cannot associate with yourself.'"  *Id.* (quoting *Yellow Bus Lines, Inc. v. Local Union 639,* 883 F.2d 132, 139 (D.C.Cir.1989)).

entity distinct from the alleged enterprise.'" *Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1182 (10th Cir. 2019).  More specifically, as applied to Torro and its officers, "a corporation and its officer cannot be a RICO association-in-fact regarding conduct undertaken in the corporation's regular business as an officer of the corporation."  *Id.* at 1183; *see also George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1249 (10th Cir. 2016) ("a defendant corporation, acting through its subsidiaries, agents, or employees typically can't be both the RICO 'person' and the RICO 'enterprise'"); *Bd. of Cnty. Comm'rs of San Juan Cnty. v. Liberty Grp.*, 965 F.2d 879, 885 (10th Cir. 1992) ("a separate enterprise is not demonstrated by the mere showing that the corporation committed a pattern of predicate acts in the conduct of its own business").  "This rule arises in cases attempting to hold a corporation responsible as the RICO defendant person for a RICO enterprise composed of the corporation and its officers and/or employees."  *Llacua* at 1183.

Here, Torro, is the lone Defendant and consequently, constitutes the RICO "person."[54] The Complaint alleges the "enterprise" consists of "Torro, together with its respective officers, owners, and investors . . . ."[55]  Thus, the RICO claim fails because Plaintiffs identify a person and an enterprise that share an identity.  As previously mentioned, "a corporation and its officer cannot be a RICO association-in-fact regarding conduct undertaken in the corporation's regular business as an officer of the corporation."  *Llacua* at 1183.  Moreover, removing any doubt that the alleged "person" is identical to the alleged "enterprise," the Complaint affirmatively alleges the culpable "persons" are Torro, "as well as its various officers and owners, and the investors in

---

[54] "The enterprise itself is not liable for RICO violations; rather, the 'persons' who conduct the affairs of the enterprise through a pattern of racketeering activity are liable."  *Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1182 (10th Cir. 2019).
[55] *Id.* ¶ 97.

Torro who participated in this illegal scheme . . . ."[56]  This allegation is functionally identical to the allegation describing the alleged "enterprise."[57]  Accordingly, Plaintiffs fail describe a RICO "enterprise" distinct from the "person" because both are defined identically and Torro, an entity, is the lone Defendant here.[58]

Based on the foregoing, the Court finds the undisputed facts demonstrate Torro is entitled to judgment in its favor on Plaintiffs' RICO and RICO conspiracy claims.[59]

## II.  <u>Torro is also entitled to summary judgment on Plaintiffs' claim for tortious interference with an existing contract</u>

Plaintiffs likewise fail to point to sufficient evidence in the record to support their claim for tortious interference with existing contract.[60]  To survive summary judgment on their claim for tortious interference with an existing contract, Plaintiffs must point to evidence in the record that could show: "(1) that [Torro] intentionally interfered with [Plaintiffs'] existing or potential economic relations, (2) by improper means, (3) causing injury to" Plaintiffs.  *Eldridge v.*

---

[56] Compl. ¶ 91.  Although the Complaint indicates unnamed officers are RICO "persons," Plaintiffs did not seek to make any individual or entity, other than Torro, a Defendant.
[57] *See* Compl. ¶ 97.
[58] Of course, the Court recognizes RICO claims can proceed against an individual defendant "person" who associates with an "enterprise" consisting of that person and a corporation in which that same individual was the sole shareholder.  *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 164 (2001).  The *Cedric Kishner* Court, however, distinguished the circumstance in that case from one where, as in this case, RICO claims are asserted against a corporate "person" allegedly associating with its employees and agents.  *See id.*
[59] "A [RICO] conspiracy claim under 18 U.S.C. § 1962(d) fails when the substantive [RICO] claim based on § 1962(c) is without merit."  *BancOklahoma Mortg. Corp. v. Cap. Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999).  Accordingly, given the infirmities with Plaintiffs' substantive RICO claim, their RICO conspiracy claim likewise fails.
[60] This claim has undergone change in the past decade or so.  Plaintiff refers to it as it is identified in Plaintiffs' Complaint, a claim for "tortious interference with an existing contract."  Compl. at 27.  While the Court recognizes the preferred terminology has changed to a claim for "intentional interference with economic relations," the Court will use the terminology in the Complaint.  *C.R. England v. Swift Transportation Co.*, 2019 UT 8, ¶ 11, 437 P.3d 343, 346.

*Johndrow*, 2015 UT 21, ¶ 70, 345 P.3d 553, 565 (alteration omitted).  Again, the record before

the Court is thin, given that Plaintiffs conducted no discovery.[61]  The parties' briefing mostly

addressed the second prong of a tortious interference claim, namely improper means.[62]

Plaintiffs' intentional interference claim is largely predicated on the conduct underlying

their RICO claims.  The Court will forego extended discussion of that conduct because it has

already been addressed.  The Court asked Plaintiffs during oral argument to explain how the

tortious interference claim could survive in the absence of a successful RICO claim.[63]  Despite

laudable efforts, Plaintiffs could not salvage this claim.  Plaintiffs initially referenced the 2022

Lien Notices directing Wyldewood's customers to pay Torro rather than Wyldewood, asserting

Torro was not authorized by statute or rule to send those notices.[64]  Yet Plaintiffs run headlong

into an insurmountable problem in this case: the MCA authorized  Torro to "direct[] customers or

account debtors . . . to make payment directly to" Torro.[65]  As previously mentioned, the Court's

earlier order in this case found that any claims challenging the MCA are precluded by Torro's

Utah State Court suit against Plaintiffs that resulted in a default judgment.[66]  Thus, Plaintiffs are

---

[61]*See* Mot. Summ. J. Hr'g 34:24–35:3, 39:1–4 (July 17, 2025).

[62] The Court notes the more glaring absence relates to causation.  Plaintiffs offer no competent evidence that any customer made changes to contracts with Wyldewood as a result of alleged wrongful conduct by Torro.  While Mr. Brewer indicates in his declaration that he "determined that the UCC Lien Notices [Wyldewood's] customers received caused" the customers to order less volume of product, Mr. Brewer offers no basis for testifying on behalf of these third parties. Mr. Brewer's determination about their motives is entirely speculative and insufficient to oppose summary judgment.  *See* Fed. R. Civ. P. 56(c)(4) (stating a "declaration used to . . . oppose summary judgment must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated").

[63] Mot. Summ. J. Hr'g 28:3–9 (July 17, 2025).

[64] Mot. Summ. J. Hr'g 28:10–19 (July 17, 2025); *see id.* at 19:11–20:10.

[65] MCA at 10;  *see* Mot. Summ. J. Hr'g 20:1–10 (July 17, 2025).

[66] *See* ECF No. 40.  Plaintiffs argued that, even if Torro's conduct was specifically allowed under the MCA, it could constitute tortious interference.  Mot. Summ. J. Hr'g 30:17–31:7 (July 17,

unable to show the 2022 Lien Notices were wrongful because they were expressly authorized by the MCA and arguments about MCA invalidity are precluded by Torro's prior suit in Utah State Court.

Finally, Plaintiffs' references[67] to the 2024 Lien Notice merit special mention. Plaintiffs' Complaint did not put Torro on notice of any interference claim stemming from the 2024 Lien Notice because the Complaint was drafted over eighteen months before Torro sent the 2024 Lien Notice. Plaintiffs may not add "new factual allegations without seeking amendment" because such addition "would read the 'fair notice' requirement out of Rule 8(a) and would seriously undermine the rule's goal of encouraging expeditious resolution of disputes." *Shyers v. Metropolitan Property & Casualty Ins. Co.*, No. 24-5036, 2025 WL 2088721, at *8 (10th Cir. July 25, 2025). Rule 8 requires the Complaint "place a defendant on notice as to the type of claim alleged and the grounds upon which it rests." *Mountain View Pharmacy v. Abbott Lab'ys*, 630 F.2d 1383, 1388 (10th Cir. 1980). The Complaint could not have put Torro on notice of any interference claim grounded upon the 2024 Lien Notice because that notice was issued July 1, 2024. Accordingly, it did not, and indeed could not have, formed any factual basis for Plaintiff's Complaint, which was filed on December 19, 2022.

Based on the foregoing, Torro is entitled to summary judgment on Plaintiffs' claim for tortious interference with an existing contract.

---

2025). This contention is legally incorrect. "[A] person is not liable for intentional interference where the person engaged only in conduct in which he or she was legally entitled to engage." *C.R. England v. Swift Transportation Co.*, 2019 UT 8, ¶ 44, 437 P.3d 343, 354; *see Eldridge v. Johndrow*, 2015 UT 21, ¶ 70, 345 P.3d 553, 565 ("in the absence of any improper means, an improper purpose is not grounds for tortious interference liability"); *see also C.R. England* at 347 ("the 'improper purpose' prong is no longer part of the tort in Utah").
[67] ECF No. 51 at 25.

## <u>ORDER</u>

Based on the foregoing, the Court GRANTS Defendant Torro, LLC's, Motion for

Summary Judgment (ECF No. 47).[68]  Judgment shall enter in favor of Defendant Torro, LLC.


DATED this 4th day of August 2025.        BY THE COURT:



Ann Marie McIff Allen
United States District Judge

---

[68] Torro also requested attorney fees as part of its requested relief.  This request is inadequately briefed, unsupported by any facts, and consequently denied.